# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| YAODI HU ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 CV 8160 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| CITY OF WHITING, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's motion to reconsider [46] the Court's March 18, 2014 Order [42], transferring this case to the Northern District of Indiana due to improper venue in the Northern District of Illinois. For the reasons set forth below, the Court denies Plaintiff's motion [46]. For the same reasons, the Court denies Plaintiff's motion to stay transfer of venue [50].

### I. Background

Plaintiff's suit arises from the death of his vision-impaired and near-deaf mother, who Plaintiff says was hit and killed by a train while crossing train tracks in Hammond, Indiana on her bicycle in October 2011. See Amend. Compl. at 11. According to Plaintiff, the railroad crossing where the accident occurred was built as an access point for the Horseshoe Casino (located in Hammond) and Whiting Beach, a beach along Lake Michigan that sits adjacent to the casino and is owned by the City of Whiting, Indiana. *Id.* at 9. Plaintiff is suing the Indiana cities of Hammond and Whiting (as well as Lake County, in which they are located), the Horseshoe Casino and its parent company Caesars Entertainment, as well as Amtrak, Norfolk Southern Railroad, and CSX Corporation, all of which he argues had a duty to make the railroad crossing

ADA-compliant. According to Plaintiff, Defendants' failure to uphold that duty renders them liable for his mother's death.

In the Court's March 18, 2014 Order, on a motion from the City of Hammond, the Court ruled that venue is not proper in the Northern District of Illinois, because "[a]ll of the defendants in this case do not reside in Illinois (*e.g.,* the City of Hammond, <u>Indiana</u>), a substantial part of the events giving rise to Plaintiff's claims did not occur in this district (or in this state, for that matter, as the train accident took place in Indiana), and there is a district (the Northern District of Indiana) in which venue is proper." [42] at 2. Rather than dismissing Plaintiff's case – which could have caused statute of limitations issues for Plaintiff, whose claims arise out of an October 2011 accident – the Court exercised its discretion to transfer Plaintiff's case to the Northern District of Indiana pursuant to 28 U.S.C. § 1406(a).

Plaintiff, however, wants to keep his case in the Northern District of Illinois and disagrees with the Court's application of Section (b)(1) of the federal venue statute. That section dictates that a civil action may be brought in "a judicial district in which any defendant resides, *if all defendants are residents of the State in which the district is located*." 28 U.S.C. § 1391(b)(1) (emphasis added). The venue statute specifies that an entity "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Plaintiff argues that the Court has personal jurisdiction over all of the Defendants in the case and, therefore, erred in concluding that venue is improper in the Northern District of Illinois.

Plaintiff devotes the majority of his brief to the City of Hammond, Indiana, a party that the Court's March 18, 2014 Order specifically identified as a Defendant in this case that does not reside in Illinois – and which therefore supported transferring the case to the Northern District of

Indiana. Plaintiff argues that Defendant Horseshoe Casino chose Hammond as the site of its casino for its proximity to Chicago, in the hopes of attracting Illinois residents. Without citing specific figures, Plaintiff maintains that Illinois citizens, in fact, do make up a sizable portion of the casino's clientele, and that Hammond, too, hoped that this would be the case when it agreed to allow Horseshoe to construct its casino and do business there. Plaintiff argues that those two Defendants – Horseshoe Casino and the City of Hammond – thus purposefully availed themselves of the benefits of Illinois, such that personal jurisdiction exists over them in this district. Plaintiff makes a similar (though more attenuated) purposeful availment argument regarding the City of Whiting. In Plaintiff's words: "Whiting owns a beach by Lake Michigan. It is attracting a lot of people from Chicago in summer." Because the Court lacks personal jurisdiction over both Hammond and Whiting (as determined below), it is unnecessary for the Court to address Plaintiff's arguments concerning the other Defendants in the case. For venue to be proper in this district, *all* of the Defendants must reside in Illinois.

**II.    Analysis**

A federal court sitting in diversity in Illinois will have personal jurisdiction over a defendant only if jurisdiction is proper under Illinois's long-arm statute. *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). Relevant here, Illinois's long-arm statute authorizes personal jurisdiction when "permitted by the Illinois Constitution and the Constitution of the United States." ILCS 5/2-209(c). The Seventh Circuit has noted that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2003). The federal test for personal jurisdiction under the Due Process Clause of the Fourteenth Amendment authorizes a court to exercise jurisdiction over a non-resident defendant only if the

3

defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The Supreme Court has distinguished two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16 (1984); see also *uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 425-26 (7th Cir. 2010). Specific jurisdiction is more limited and a plaintiff in such circumstances must show that the alleged controversy between the parties "arise[s] out of" or "relate[s] to" the defendant's forum contacts in addition to establishing that minimum contacts exist. *Hyatt*, 302 F.2d at 713. "[S]pecific jurisdiction requires that the defendant's contacts with the forum state relate to the challenged conduct." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). The defendant's contacts with the forum state must be of a nature and quality such that the defendant has fair warning that it could be required to defend a suit in that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). This ensures that jurisdiction over a defendant is "not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue" and that "the defendant retains sufficient, albeit minimal, ability to structure its activities so that it can reasonably anticipate the jurisdictions in which it will be required to answer for its conduct." *Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003).

By contrast, general jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros*, 466 U.S. at 416. The contacts must be

4

so "continuous and systematic that the defendant could reasonably foresee being haled into court in that state *for any matter.*" *Central States, Southeast and Southwest Areas Pension Fund v. Phencorp. Reinsurance Co., Inc.*, 440 F.3d 870, 875 (7th Cir. 2006) (emphasis added). "[T]he threshold for general jurisdiction is quite high because 'the contacts must be sufficiently extensive and pervasive to approximate physical presence.'" *Felland*, 682 F.3d at 673 (quoting *Tamburo v. Dworkin* 601 F.3d 693, 701 (7th Cir. 2010).

Here, Plaintiff argues that Hammond has contacts with (and purposely availed itself of the benefits of) Illinois by virtue of its physical proximity to the state and hopefulness that Illinoisans might spend their money at its privately-owned casino. To the extent that this argument has any merit at all, the train accident at the heart of this controversy did not arise out of and does not relate to that "contact" with Illinois. At the time of the accident, Plaintiff and his mother were residents of Whiting, Indiana, who regularly frequented the nearby Horseshoe Casino. Therefore, even if the City of Hammond in any way (implicitly or explicitly) solicited Illinois residents to patronize the Horseshoe Casino located within its city limits, that contact was entirely unrelated to (and in no way caused) Plaintiff's mother's accident. The same is even truer for Whiting Beach, which is a natural landform, rather than a manmade business that was constructed to attract customers. If Illinois residents (or residents of any other state, for that matter) visit Whiting's beaches, it is a mere fortuitous event, devoid of purposeful availment on the part of Whiting. And besides, Plaintiff's mother's accident did not arise from this contact, even if somehow purposeful on the part of Whiting. Furthermore, to the extent that Horseshoe Casino and Hammond are seeking to draw Illinois residents to Indiana, neither Defendant can be said to be "invoking the benefits and protections" of *Illinois* law. *Hanson*, 357 U.S. at 253.

Courts that have permitted suits against out-of-state municipalities on the basis of specific jurisdiction most frequently have done so when that municipality breached a contract with an out-of-state party or committed a tort in that other state. See *People of the State of Ill. v. City of Milwaukee*, 731 F.2d 403, 406 (7th Cir. 1984) (noting that in personam jurisdiction existed over the City of Milwaukee, Wisconsin and City of Hammond, Indiana in a suit accusing the defendants of water pollution, pursuant to the Illinois long arm statute, because the cities "through conduct outside of Illinois were causing injury within Illinois and were therefore committing tortious acts within the state"); *Creative Socio-Medics, Corp. v. City of Richmond*, 219 F. Supp. 2d 300, 307 (E.D.N.Y. 2002) (concluding that personal jurisdiction existed over the City of Richmond, Virginia in a contract dispute because the city purposefully availed itself of the benefits of New York by entering into a contractual relationship with a New York corporation and employing that corporation to provide on-going services in New York for its benefit in Richmond). By contrast, the accident that spurred this lawsuit did not arise from Hammond's or Whiting's "contact" with Illinois residents. Though Plaintiff may argue that the accident arose from Hammond's and Whiting's contact with Illinois in so far as the railroad crossing was constructed for the benefit of Illinois's casino and beach-goers, the Seventh Circuit has been clear that such "loose causal connection[s] between a suit and a defendant's forum contacts as the basis for personal jurisdiction [does not] comport[] with fair play and substantial justice." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997). Accordingly, this Court lacks specific jurisdiction over Hammond and Whiting.

General jurisdiction does not exist over Hammond or Whiting either. Though physically located just over the Illinois border in Indiana, there is no basis for the Court to rule that either city had "continuous and systematic" contact with Illinois that approximated to a physical

presence in Illinois itself and would render it reasonable for the cities to foresee being sued in Illinois for any matter. *Alderson v. Southern Co.*, 747 N.E.2d 926 (Ill. App. Ct. 2001), illustrates this point. In that case, a power producer located in Hammond, Indiana delivered power exclusively to Illinois residents. 747 N.E.2d at 947. The main access to the plant in Hammond was just over the Illinois border, and the plant owned an easement over an Illinois private road that allowed it access to the plant's entrance. *Id.* at 935. Moreover, the plant had a connection to the City of Chicago's sewer system, and – on the day of the explosion giving rise to the suit – the Chicago police and fire departments responded to the plant. *Id.* The court determined that the Indiana power producer's contacts with Illinois were continuous and systematic such that general jurisdiction existed over the plant in Illinois. *Id.* at 947. The behavior by the cities of Hammond and Whiting in the present case in no way resembles that of the Hammond-based defendant in *Alderson*, whose contacts with Illinois could reasonably be said to approximate physical presence in the state. By contrast, the cities of Whiting and Hammond – as far as the Court can tell – have no continuous presence in Illinois at all. The Court therefore lacks general jurisdiction over Hammond and Whiting.

At the end of the day, Plaintiff's mother, an Indiana resident, was involved in an accident in an Indiana city. Plaintiff wants to hold that Indiana city (and its neighboring city) responsible. But he wants to litigate his suit in Chicago, because that's where he now lives. But doing so would offend traditional notions of fair play and substantial justice, so the Court concludes that personal jurisdiction (and therefore venue, in this instance) is lacking.

In any event, even if (1) the Court did have personal jurisdiction and (2) venue was proper in the Northern District of Illinois, the Court still would be inclined to transfer this suit to the Northern District of Indiana pursuant to 28 U.S.C. § 1404(a), which establishes that "[f]or the

convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." Section 1404(a) may be invoked only if venue is proper in the district where the case was filed. See 15 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE § 3844, at 33 (3d ed. 2007 & Supp. 2013) ("[t]ransfer under Section 1404(a) is possible only if venue is proper in the original forum"). When venue is proper in both the transferor and transferee courts, the § 1404(a) analysis turns on the convenience of the parties and the witnesses and on the interests of justice. These two inquiries are distinct. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Id.* at 219. In deciding to transfer a case pursuant to Section 1404, it is proper for the Court to consider: (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of the witnesses, (4) the interests of justice, and (5) the location of the material events giving rise to the case. See *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 254 (7th Cir. 1996).

Here, the only factor that would cut in favor of keeping the case in the Northern District of Illinois is that Plaintiff chose this forum. But as mentioned, Plaintiff only brought this suit here because he now lives in Chicago. The controversy itself has no connection to the Northern District of Illinois. At the time of the alleged accident, both Plaintiff and his now-deceased mother lived in Whiting, Indiana, just up the street from the scene of the accident in Hammond. The Defendants include two Indiana cities, an Indiana county, and an Indiana casino. Therefore, the witnesses and evidence in this case are far more likely to be located in Indiana than Illinois. Moreover (though not entirely clear from Plaintiff's *pro se* amended complaint), Plaintiff

appears to be pursuing tort claims on behalf of his mother's estate, which will be governed by Indiana law. Although Plaintiff notes that he does not drive and that the federal courthouse in Chicago is more convenient for him than the federal courthouse in Hammond[1] (where the nearest Northern District of Indiana courthouse is based), Hammond's federal courthouse is located just 20 miles from Chicago's federal courthouse and is accessible via public transportation from Chicago. On the whole, the Northern District of Indiana is a far more convenient location for the parties and witnesses implicated by this suit, and the incident giving rise to this suit occurred in the same city where the Northern District of Indiana courthouse is located. Therefore, the interests of justice would compel this Court to transfer the case, even if venue was proper here.

### III. Conclusion

For the reasons stated, the Court denies Plaintiff's motion to reconsider [46] its ruling transferring this case to the Northern District of Indiana and denies Plaintiff's motion to stay transfer of venue [50].

Dated: March 31, 2014

Robert M. Dow, Jr.
United States District Judge

---

[1] The Court's understanding is that this case, which arises from an accident that occurred in Lake County, Indiana, will be transferred to the Northern District of Indiana's Hammond Division. See http://www.innd.uscourts.gov/divisional.shtml (noting that the district's Hammond division comprises Lake and Porter counties).